# Exhibit A-1

Sean Allen's Complaint

**IN THE COUNTY COURT OF THE SIXTH JUDICIAL CIRCUIT**
**IN AND FOR PASCO COUNTY, FLORIDA**
**CIVIL DIVISION**

**SEAN ALLEN,**

*Plaintiff,* Case No.:

v.

**OPICHI, LLC, d/b/a EVERGREEN SERVICES,** *and*
**FACTORTRUST, INC.,**

*Defendants.*
_________________________________/

**COMPLAINT & DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Sean Allen ("**Mr. Allen**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Opichi, LLC, *doing business as* Evergreen Services ("**Opichi**"), and FactorTrust, Inc. ("**FactorTrust**"), (collectively, the "**Defendants**"), stating as follows:

UNOFFICIAL DOCUMENT

**PRELIMINARY STATEMENT**

1. This is an action for damages greater than $8,000, but less than $50,000, exclusive of attorneys' fees and costs, brought by Mr. Allen against the Defendants for violations of the Florida Civil Remedies for Criminal Practices Act, § 772.101, Fla. Stat., *et seq.* ("**CRCPA**"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("**RICO**"), and against Opichi only for violations of the Florida Consumer Collection Practices Act, § 559.55, Fla. Stat., *et seq.* ("**FCCPA**").

**JURISDICTION AND VENUE**

2. Jurisdiction arises under RICO, 18 U.S.C. § 1965, the FCCPA, § 559.77(1), Fla. Stat., the CRCPA, § 772.104, Fla. Stat., and § 34.01, Fla. Stat.

3. The Defendants are subject to the provisions of RICO, the FCCPA, the CRCPA, and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4. Venue is proper in Pasco County, Florida, pursuant to § 47.051, Fla. Stat., because the acts complained of were committed and/or caused by the Defendants therein.

## PARTIES

### Mr. Allen

5. Mr. Allen is a natural person residing in Dade City, Pasco County, Florida.

6. Mr. Allen is a *Consumer* as defined by the FCCPA, § 559.55(8), Fla. Stat.

### Opichi

7. Opichi is chartered pursuant to the laws of the Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally recognized sovereign Indian nation (the "LDF Tribe").

8. Opichi claims to be a wholly owned subsidiary of LDF Holdings, LLC ("LDF Holdings").

9. LDF Holdings claims to be a wholly owned subsidiary of the LDF Tribe.

10. Opichi and LDF Holdings claim to operate as "arms of the LDF Tribe."

11. Opichi can be served at the LDF Tribal Office, located at 418 Old Abe Rd, Lac Du Flambeau, WI 54538.

12. Opichi issues loans to consumers online through the website www.Evergreenloans.com ("**Evergreen**").

### FactorTrust

13. FactorTrust is a Delaware limited liability company with a principal business address of P.O. Box 3653, Alpharetta, GA, 30023.

UNOFFICIAL DOCUMENT

14. FactorTrust's Delaware registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

## FACTUAL ALLEGATIONS

15. Around October 28, 2022, Mr. Allen obtained a short-term loan of $450 from Evergreen (the "**First Loan**").

16. Mr. Allen repaid the First Loan, repaying a total of $1,723.50.

17. Around June 2, 2023, Mr. Allen obtained a second short-term loan of $750 from Evergreen (the "**Second Loan**"). **SEE PLAINTIFF'S EXHIBIT A.**

18. The proceeds of both the First Loan and Second Loan (jointly, the "**Loans**") were wired to Mr. Allen's checking account which he maintains in Florida.

19. The Second Loan required Mr. Allen to pay a total of $3,562.50 on a $750 loan.

20. Mr. Allen has repaid at least $712.50 towards the Second Loan.

21. Mr. Allen applied for the Loans from Florida.

22. Mr. Allen received collection correspondence at his home in Florida and had funds withdrawn from his Florida checking account.

23. The transactions therefore occurred in Florida and are subject to Florida law.

24. Section 687.071(3), Fla. Stat. renders the issuing of credit at an annual interest rate greater than 25% a criminal offense.

25. Section 687.071(7), Fla. Stat. renders any such loan, and logically any debt stemming from such extension of credit, void and unenforceable.

26. Florida has taken usury one step further in the consumer loan context through the passing of the Consumer Finance Act, Chapter 516, Florida Statutes (the "Act").

UNOFFICIAL DOCUMENT

27. The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of $25,000 or less. § 516.02(1), Fla. Stat.

28. The Act further restricts the interest and fees which may be charged by a licensed consumer finance company.

29. § 516.02(c), Florida Statutes indicates that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made*.

30. Thus, Florida has made clear that in order to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Consumer Finance Act.

31. Opichi is not licensed as a Consumer Finance Company in Florida.

32. On information and belief, the stated annual interest rate on the First Loan exceeded 45%.

33. The stated annual interest rate on the Second Loan was 794.69%. ***Id.***

34. The Loans were therefore void *ab initio* pursuant to Florida law.

35. The Loans each charged interest at more than double Florida's criminal rate of 25%, and therefore the Loans, and any balance arising therefrom, constitute "unlawful debts" per § 772.102(2), Fla. Stat.

36. Mr. Allen utilized the proceeds of both Loans for personal and household purchases.

37. The Loans balances thus meets the definition of debt under the FCCPA, § 559.55(6), Fla. Stat.

38. Evergreen sought to collect this balance via emails to Mr. Allen, withdrawals from his bank account, and via credit reporting.

UNOFFICIAL DOCUMENT

**Opichi's Lending Enterprise**

39. The only business Opichi conducts is making small-dollar loans to consumers through the website, www.evergreenloans.com.

40. Opichi claims to act as an arm of the LDF Tribe.

41. LDF Holdings acts as the parent company to dozens of tribal lending entities ("TLEs"), all of which are purportedly chartered under the laws of the LDF Tribe.

42. As an arm of the tribe, Opichi claims tribal sovereign immunity from criminal and civil prosecution regarding its lending practices, which constitute felonies in many states, including Florida.

43. However, the idea that Opichi is a legitimate "arm-of-the-tribe" is a farce.

44. Opichi contracts with a series of non-tribal "service providers," such as Rivo Holdings, LLC ("Rivo").

45. These service providers purchase leads, perform loan portfolio management, collection, call center operations, and credit reporting on behalf of Evergreen.

46. These service providers retain the vast majority of revenue generated through collection of Evergreen's loans.

47. Such sham arrangements involving a Native American tribe claiming ownership of a company actually operated by a non-tribal entity are known as "rent-a-tribe" agreements.

48. In exchange for chartering Opichi and claiming the tribal entity owns the lending enterprise, the LDF Tribe is paid a small percentage of revenues -- on information and belief, around 2%.

49. The non-tribal service providers are the primary beneficiaries of Opichi's loans – not the LDF Tribe.

UNOFFICIAL DOCUMENT

50. Evergreen collected the Loans through interstate means -- ACH withdrawals from Plaintiff's bank account in Pasco County-- and emailed payment reminders and other notices to Mr. Allen at his home in Pasco County.

51. As aforementioned, Mr. Allen repaid the void First Loan, repaying a total of $1,723.50.

52. Mr. Allen paid at least $712.50 towards the void Second Loan.

53. Despite nearly repaying the loan in full, Evergreen claims Mr. Allen still owes almost $1,800 more in interest and fees.

**FactorTrust Knowingly Facilitates Loansharking**

54. On June 1, 2023, FactorTrust furnished a credit report to Evergreen in connection with Plaintiff's loan application. **SEE PLAINTIFF'S EXHIBIT B.**

55. FactorTrust is a specialty CRA which primarily services the needs of online payday lenders like Evergreen – *e.g.*, lenders making short-term, small-dollar loans at triple-digit interest rates.

56. FactorTrust maintains terabytes of proprietary data specifically tailored to assist online, subprime lenders in evaluating potential borrowers, including consumers' checking account histories, employment and salary data, and past payday loan experiences.

57. In most cases, when an online lender orders a credit report on a consumer, FactorTrust supplements the data in its reports with information from its parent company, Trans Union LLC ("**Trans Union**"), one of the "Big 3" nationwide CRAs, as well as data from other specialty CRAs, including Chex Systems.

58. FactorTrust was originally an independent company prior to being acquired by Trans Union. FactorTrust was established in 2006 and, according to a deposition of Brett Taylor,

UNOFFICIAL DOCUMENT

FactorTrust's Vice President of Sales, its business consisted of "servicing online payday guys." *Deposition of Brett Taylor*, July 24, 2017, *FactorTrust Inc. v. Evanson Insurance Company*, Case 1:16-CV-02711-LMM, N.D. Georgia, 2016.

59. In a 2016 interview published on Provenir.com – a web developer which provides underwriting and decisioning software to online lenders – FactorTrust's CEO, Greg Rable, boasted that, through the use of its proprietary database containing information about 200 million consumer transactions with "alternative" lenders, it was able to evaluate the credit risk and return a score to an online lender in "around a second to a second and a half." Jonathan Pryer, *113 Million US Adults Have Non-Prime Credit Scores – What Are We Doing About It?*, November 7, 2016, https://www.provenir.com/resources/blog/113-million-us-adults-have-non-prime-credit-scores.

60. Rable went on to explain that "the three big credit bureaus historically hadn't tracked data in [online alternative lending] so we set out to help lenders more accurately predict consumer borrowing behavior in the growing, often neglected, underbanked segment." *Id.*

61. At the time of that interview, Rable was a member of the Board of Directors of the *Online Lenders Alliance* ("**OLA**"), a politically active trade group which advocates for looser regulation of lenders involved in online payday lending. See, e.g., *350 Percent Interest Rate? Senators Bankrolled By Payday Lenders Can Live With That*, International Business Times, published November 17, 2017.

62. While on the board of the OLA, Rable served alongside several of the leading proponents of what is referred to as the "rent-a-tribe" lending model, including Mark Curry, the millionaire lender behind the American Web Loan "tribal" lender. See *Solomon v. Am. Web Loan*, 4:17CV145 (E.D. Va.) (recently approved class action settlement against AWL and Curry).

UNOFFICIAL DOCUMENT

63. Another OLA board member was Kenneth Rees, the former CEO of Think Finance, which operated the purportedly "tribally owned" Plain Green Loans under a rent-a-tribe scheme.

64. FactorTrust regularly furnishes credit reports to online payday lenders who make loans at rates in excess of 600% annually, including LendUMo, Makwa Lending, TargetCashNow, Money Messiah, Tan Oak Financial, MyFlexCash.com, and NetCashMan, many of which are part of rent-a-tribe schemes.

65. FactorTrust also receives tradeline data concerning loans from each of the aforementioned online lenders, as well as many others, and is thus in possession of loan information on millions of consumers.

66. FactorTrust has extensive policies in place to conduct due diligence on potential new subscribers, as it is required to do so by the federal Fair Credit Reporting Act, which includes, in most cases, sending an investigator to the primary business office of the lender.

67. In situations where a lender is "tribally" owned but has a non-tribal "services provider," FactorTrust typically sends its investigator to the offices of the service provider.

68. FactorTrust also examines which states the lender operates in, along with the lender's website, which includes its interest rates, terms, and fees assessed.

69. FactorTrust's parent company, Trans Union, has been involved in dozens of lawsuits involving its sale of credit reports and its status – unique amongst the Big 3 Nationwide CRAs – of accepting tradeline data from certain large tribal lenders like Plain Green and MobiLoans, both of which makes loans to consumers at interest rates exceeding 300% annually. See, e.g., *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020).

70. As a result of the extensive litigation which delved in great detail into "rent-a-tribe" schemes and, moreover, repetitively hammered the fact that the loans were made at triple-digit

UNOFFICIAL DOCUMENT

interest rates, Trans Union and its wholly owned subsidiary, FactorTrust, know of the usurious interest rates charged by these online lenders, including Evergreen.

71. Thus, at the absolute minimum, and in a light most favorable to FactorTrust, it knew, when furnishing a consumer credit report to Evergreen in regard to Mr. Allen's Evergreen Loans, the data that it was providing was in connection with the making of a loan at a triple-digit interest rate.

72. Even if FactorTrust somehow believed the LDF Tribe was the real, legitimate lender of loans made through Evergreen, FactorTrust nonetheless knew in no uncertain terms it was providing tools and assistance to a lender making a loan at triple-digit interest rates.

73. FactorTrust is thus aware that it is providing information to facilitate online loansharking, since it gets a bird's-eye view of these lending rackets via tradeline data reported back to Factor Trust and through its investigations of each lender.

74. FactorTrust's data was fed into Evergreen's automated underwriting software, which determined Mr. Allen should be given a loan.

75. FactorTrust's data is thus of critical importance to Evergreen's lending enterprise.

76. Absent the trove of data FactorTrust knowingly supplied, no such loan could have been or would have been made to Mr. Allen.

UNOFFICIAL DOCUMENT

**Defendants' Scheme Constitutes an Enterprise Under RICO**

77. RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

78. In *Boyle v. United States*, the Supreme Court recognized that RICO's definition of enterprise was "obviously broad" and included an "association in fact" enterprise. 556 U.S. 938, 944 (2009).

79. Thus, an enterprise may be a legally recognized entity like a corporation or an "association in fact enterprise," i.e., "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Boyle*, 556 U.S. at 948 ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose.").

80. Defendants are an association-in-fact enterprise who are associated together for the common purpose of making, collecting, and profiting off illegal loans.

81. Courts throughout the nation have held that even the provision of ordinary and legal services (i.e., the selling of credit reports) can create liability under RICO if the actors are aware of the greater scheme afoot. *See, e.g. Smith v. Berg*, 247 F. 3d 532, 537 (3d Cir. 2001) (relying on *Salinas v. United States*, 522 U.S. 52 (1997) (holding that a court may not dismiss a RICO claim against an alleged conspirator simply because the defendant characterizes itself as having merely provided ordinary services, if there are plausible allegations that those services were provided with an awareness of the broader scheme being furthered).

82. A plaintiff "can establish a RICO conspiracy claim by showing a [d]efendant: (1) agreed to the overall objective of the conspiracy; or (2) agreed to commit two predicate acts." *In re Takata Airbag Prods. Liab.*, 396 F. Supp. 3d 1101, 1164 (S.D. Fla. 2019).

83. FactorTrust agreed to the overall objective of the conspiracy – to profit by providing data for underwriting analysis to the enterprise – and committed thousands of predicate acts, by

UNOFFICIAL DOCUMENT

selling a considerable number of reports on other consumers to Evergreen to facilitate the enterprise.

84. The Defendants' conduct further caused Mr. Allen to suffer extreme emotional distress upon learning that the loan he had entered into charged interest at more than thirty (30) times Florida's maximum rate.

85. Mr. Allen has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

UNOFFICIAL DOCUMENT

**COUNT I**
**DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.**

86. Mr. Allen adopts and incorporates Paragraphs 1 – 85 as if fully restated herein.

87. The Defendants, through their participation in the furtherance of the Evergreen loans scheme, along with other persons, natural and otherwise, constitute an *Enterprise* under the CRCPA, § 772.102(3), Fla. Stat.

88. The Loans each charged an interest rate far in excess of Florida's maximum permitted rate and, thus, the Loans constitute *Unlawful Debts* under § 772.102(2), Fla. Stat.

89. The Defendants each associated with the enterprise and participated in the affairs of the enterprise as described in detail herein, which existed for the purpose of collection of unlawful debt.

90. Opichi operated Evergreen, while FactorTrust provided the consumer data necessary for its operation.

91. The Defendants' participation in the enterprise violated **§ 772.103(3), Fla. Stat.**, and caused Mr. Allen to repay amounts on the unlawful Loans.

**WHEREFORE,** Mr. Allen respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a. Threefold the amount of actual damages totaling **$7,308** ($2,436 *3) or, in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b. Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c. Any other relief this Court deems equitable and proper under the circumstances.

**COUNT II**
**DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.**

92. Mr. Allen adopts and incorporates Paragraphs 1 – 85 as if fully restated herein.

93. The Defendants, through their participation in the furtherance of the Evergreen loans scheme, along with other persons, natural and otherwise, constitute an *Enterprise* under the CRCPA, § 772.102(3), Fla. Stat.

94. The Loans each charged an interest rate far in excess of Florida's maximum permitted rate and, thus, the Loans constitute *Unlawful Debts* under § 772.102(2), Fla. Stat.

95. The Defendants violated **§ 772.103(4), Fla. Stat.** by conspiring with the other, and other persons and entities, to issue and collect unlawful debts through Evergreen.

96. The Defendants were aware of the goals of the enterprise and each took actions in furtherance of this conspiracy. For example, at various times, the Defendants have: (a) issued the Loans to Mr. Allen; (b) requested and obtained a consumer credit report regarding Mr. Allen; (c) sold a consumer credit report regarding Mr. Allen to assist with review of his loan applications; (d) initiated ACH deposits and withdrawals to and from Mr. Allen's bank account; and (e) attempted collection of the Loans.

UNOFFICIAL DOCUMENT

97. The Defendants each agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful debts through Evergreen.

**WHEREFORE,** Mr. Allen respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a. Threefold the amount of actual damages totaling **$7,308** ($2,436 *3), or in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b. Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c. Any other relief this Court deems equitable and proper under the circumstances.

**COUNT III**
**OPICHI'S VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.**

98. Mr. Allen adopts and incorporates Paragraphs 1 – 85 as if fully restated herein.

99. Opichi violated **§ 559.72(9), Fla. Stat.**, when they asserted the existence of legal rights which do not exist, specifically, the right to collect online payday loans made to Mr. Allen by Evergreen which each charged annual interest exceeding 700%, when such loans are null and void pursuant to Florida law.

100. The Loans were illegitimate and unenforceable due to the application of interest rates in excess of 700% percent annually on the principal amount of the loans, in violation of § 687.071, Fla. Stat., and Opichi knew, or should have known, the Loans were unenforceable in Florida.

101. Opichi utilized bank wire transfers to credit, and then debit, Mr. Allen's checking account he maintained in Florida in connection with the collection of the alleged debts.

UNOFFICIAL DOCUMENT

102. Opichi acted with knowledge of the illegality of its actions in pursuing collection of the Loans in Florida, as it has been sued before for similar conduct and have designed its entire lending operation around evading state usury laws.

103. Accordingly, Opichi is liable to Mr. Allen for actual damages, statutory damages of up to $1,000.00, reasonable attorneys' fees, and costs.

104. Mr. Allen also seeks an injunction against Opichi, prohibiting them from any further collection of any unlawful debt from Mr. Allen.

**WHEREFORE,** Mr. Allen respectfully requests this Honorable Court enter judgment against Opichi, ordering:

a. Statutory damages of **$1,000.00**, pursuant to § 559.77(2), Fla. Stat.;

b. Actual damages of **$2,436**, pursuant to § 559.77(2), Fla. Stat.;

c. Injunctive relief preventing Opichi from attempting any further debt collection from Mr. Allen pursuant to § 559.77(2), Fla. Stat.;

d. Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and,

e. Such other relief that this Court deems just and proper.

UNOFFICIAL DOCUMENT

**COUNT IV**
**DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)**

105. Mr. Allen adopts and incorporates Paragraphs 1 – 85 as if fully restated herein.

106. The Defendants, through their participation in the furtherance of the Evergreen scheme, along with other persons, natural and otherwise, constitute an *Enterprise* as defined by 18 U.S.C. § 1961(4).

107. The Loans each charged an interest rate far in excess of Florida's maximum permitted rate, and thus the Loans were *Unlawful Debts* pursuant to 18 U.S.C. § 1961(6).

108. The Defendants each associated with the enterprise and participated in the affairs of the enterprise as described in detail herein, which existed for the purpose of collection of unlawful debt.

109. The Defendants' participation in the enterprise violated **18 U.S.C § 1962(c)** and caused Mr. Allen to repay amounts on the unlawful Loans.

**WHEREFORE,** Mr. Allen respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a. Threefold the amount of actual damages totaling **$7,308** ($2,436 * 3);

b. Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

c. Any other relief this Court deems equitable and proper under the circumstances.

**COUNT V**
**DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO, 18 U.S.C § 1962(d)**

110. Mr. Allen adopts and incorporates Paragraphs 1 – 85 as if fully restated herein.

111. The Defendants, through their participation in the furtherance of the Evergreen scheme, along with other persons, natural and otherwise, constitute an *Enterprise* as defined by 18 U.S.C. § 1961(4).

112. The Loans each charged an interest rate far in excess of Florida's maximum permitted rate, and thus the Loans were *Unlawful Debts* pursuant to 18 U.S.C. § 1961(6).

113. The Defendants violated **18 U.S.C § 1962(d)** by conspiring with each other, and other entities and individuals, to issue and collect unlawful debts through Evergreen.

114. The Defendants were aware of the goals of the enterprise and each took actions in furtherance of this conspiracy. For example, at various times, the Defendants have: (a) issued the Loans to Mr. Allen; (b) requested and obtained a consumer credit report regarding Mr. Allen; (c)

UNOFFICIAL DOCUMENT

sold a consumer credit report regarding Mr. Allen to assist with review of his loans application; (d) initiated ACH deposits and withdrawals to and from Mr. Allen's bank account; and, (e) attempted collection of the Loans.

115. The Defendants each agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans through Evergreen.

**WHEREFORE,** Mr. Allen respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a. Threefold the amount of actual damages totaling **$7,308** ($2,436 * 3);

b. Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

c. Any other relief this Court deems equitable and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Mr. Allen hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 5, 2024, by:

UNOFFICIAL DOCUMENT

**SERAPH LEGAL, P. A.**

/s/ *Fethullah Gulen*
Fethullah Gulen, Esq.
Florida Bar Number: 1045392
FGulen@seraphlegal.com
2124 W Kennedy Blvd, Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff,*
*Sean Allen*

**ATTACHED EXHIBIT LIST**

A Mr. Allen's Evergreen Loan Agreement, June 2, 2023 – Excerpt
B Mr. Allen's FactorTrust Disclosure, Inquiry Excerpt

# PLAINTIFF'S EXHIBIT A

## Mr. Allen's Evergreen Loan Agreement, June 2, 2023 - Excerpt

| Loan No: [redacted]<br>Application Date: 6/1/2023<br>This is the date you signed and submitted this application to the lender. | **CONSUMER INSTALLMENT LOAN AGREEMENT** | Effective Date: 6/2/2023<br>Maturity Date: 04/04/2024 |
|---|---|---|

**THIS AGREEMENT SHALL NOT CONSTITUTE A "NEGOTIABLE INSTRUMENT"**

| Lender's Name: [illegible] Evergreen Services<br>Address: PO Box 834<br>City, State, Zip: Lac du Flambeau, WI 54538<br>Phone: [illegible] | Borrower's Name: Allen Sean<br>Borrower's ID: [redacted]<br>Borrower's Address: [redacted]<br>City State, Zip: DADE CITY, FL 33525<br>Phone: [redacted] |
|---|---|

In this Consumer Loan Agreement ("Loan Agreement"), the words "you," "your," and "I" mean the borrower who has signed this agreement. The words "we," "us" and "our" mean [illegible] Evergreen Services ("Lender" or "Evergreen Services") an entity owned by a Federally Recognized Native American Tribe, Lac du Flambeau Band of Lake Superior Chippewa Indians of Wisconsin ("Tribe"). "Loan" means this consumer installment loan.

**CONSENT TO ELECTRONIC COMMUNICATIONS:** [illegible]

[illegible]

☑ By checking this box, you hereby agree to the terms of this Consent to Electronic Communications.

**YOUR ELECTRONIC SIGNATURE:** [illegible]

UNOFFICIAL DOCUMENT

TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Maximum Amount of Total Payment |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| [illegible]% | $2,812.50 | $750.00 | $3,562.50 |

Your Payment Schedule (The "Payment Schedule") will be:

| Number of Payments | Amount of Payments | Due Date |
|---|---|---|
| 1 | $225.00 | June 15, 2023 |
| 2 | $225.00 | June 29, 2023 |
| 3 | $262.50 | July 13, 2023 |
| 4 | $251.25 | July 27, 2023 |
| 5 | $240.00 | August 10, 2023 |
| 6 | $228.75 | August 24, 2023 |
| 7 | $217.50 | September 7, 2023 |
| 8 | $206.25 | September 21, 2023 |
| 9 | $195.00 | October 5, 2023 |
| 10 | $183.75 | October 19, 2023 |
| 11 | $172.50 | November 2, 2023 |
| 12 | $161.25 | November 16, 2023 |
| 13 | $150.00 | November 30, 2023 |
| 14 | [illegible] | December 14, 2023 |

# PLAINTIFF'S EXHIBIT B

## Mr. Allen's FactorTrust Disclosure, Inquiry Excerpt

7/20/23, 7:02 PM FactorTrust



**PROMOTIONAL INQUIRIES**

The companies listed received your name, address and other limited information about you so they could make a firm offer of credit or insurance. They did not receive your full credit report. These inquiries are not seen by anyone but you and do not affect your score.

**ACCOUNT REVIEW INQUIRIES**

The listing of a company's inquiry in this section means that they obtained information from your credit file in connection with an account review or other business transaction with you. These inquiries are not seen by anyone but you and will not be used in scoring your credit file (except insurance companies may have access to other insurance company inquiries, certain collection companies may have access to other collection company inquiries, and users of a report for employment purposes may have access to other employment inquiries, where permitted by law).

| Date | Customer ID | Name | Consumer Contact |
|---|---|---|---|
| 06/01/2023 | 4894 | Evergreen Loans | PO Box 834<br>Lac Du Flambeau, WI 54538<br>866-328-2556<br>customerservice@evergreenloans.com |

https://www.factortrust.com/consumer/Report.aspx 6/17